**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

JAMES FRANKLIN HARRINGTON,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:16-cv-01006-JEH

**Order and Opinion**

Now before the Court are the Plaintiff, James Harrington's, Motion for Summary Judgment (D. 11)[1] and the Commissioner's Motion for Summary Affirmance (D. 16).  Both parties have provided supporting Memoranda thereto. (D. 12, 17).  For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Defendant's Motion for Summary Affirmance.[2]

**I**

On May 7, 2012, Harrington filed an application for Social Security Disability Insurance benefits (DIB) alleging disability beginning on July 12, 2010. His claim was denied initially on September 7, 2012, and denied upon reconsideration on April 5, 2013.  On May 10, 2013, Harrington filed a request for a hearing on his application for DIB.  Harrington appeared at the hearing before the Honorable Susan Sarsfield (ALJ) on June 3, 2014.  He was represented by an attorney.  Following the hearing, the ALJ denied Harrington's claim on July 2,

---

[1] Citations to the Docket in this case are abbreviated as "D. __."
[2] The undersigned presides over this case with the consent of all parties. (D. 9).

2014.  The Appeals Council denied Harrington's request for review on December 2, 2015, making the ALJ's Decision the final decision of the Commissioner. Harrington filed the instant civil action, seeking review of the ALJ's Decision, pursuant to 42 U.S.C. § 405(g), on January 6, 2016.

**II**

At the time Harrington applied for benefits, he was 51 years old.  He was living in a home, in Canton, Illinois with his ex-wife, who earns income. Harrington earned a GED, but has not worked since July 12, 2010.  On the various SSA forms he submitted, Harrington indicated that he has chronic lower back pain, arthritis, headaches, and hypertension, which substantially limit his ability to work.  (D. 5 at pg. 229; 259)

At the hearing before the ALJ, Harrington stated his mobility is limited because he is in chronic pain.  Specifically, he said his neck is almost continually in pain and his lower back flares up with debilitating pain if he lifts more than twenty pounds or walks more than approximately half a block.  Harrington testified that his neck pain is only alleviated by steroid injections into certain trigger points.  He also said that when his back is in pain, the pain radiates down to his legs.  Generally speaking, he can sit down for approximately an hour at a time, after which he needs to stand up and walk around briefly.  Harrington estimated that he had been to the ER approximately three times in the year prior to the hearing due to pain from his neck and/or back.

Harrington testified that his ex-wife drives him around, does all the grocery shopping for them and runs his other errands.  He said he does not drive often because, on the advice of his doctor, he avoids doing so given the medication he takes.  In addition to blood pressure medicine, Harrington takes morphine and oxycodone two and three times a day, respectively.  He said these narcotics make it difficult for him to concentrate and he tires easily.  Harrington also stated that

2

he takes medication for anxiety and depression, but has never been hospitalized for either condition. He testified that he has no other mental health issues or problems concentrating.

Harrington said the oxycodone and morphine he takes dulls the pain in his back and neck slightly, and only for approximately two and a half hours at a time. He stated that his doctors are aware of this but have not recommended him for pain management. Harrington asserts that his pain is increasing and that his overall muscle strength has lessened. He uses a TENS unit, which puts electric pulses into his neck, for approximately three hours a day and averages the same amount of sleep most nights. Harrington said that if he spends any more time on his back, his neck gets too stiff.

Harrington has not had surgery on his back or neck and has been advised by his doctor that he is not a candidate for surgery. He has not been prescribed a brace or splint for his neck or lower back, but sometimes utilizes a walking cane for added stability when needed.

Harrington testified that he could not work due to his pain. By way of example, he stated that two weeks before the hearing he used a hedge trimmer for approximately fifteen minutes—a task he did not normally perceive as strenuous. He said this caused him severe neck pain and a headache. He asserted that the pain that ensues in his neck as a result of such activity, which he thinks possibly leads to headaches, simply will not allow him to continue working. Harrington testified that one of his doctors attributes his headaches to disc degeneration in his neck. He says he wakes up every day with a headache, which lasts anywhere from two to twelve hours—sometimes longer. Harrington said he avoids using his entire upper body in order to keep his reoccurring headaches at bay.

Harrington has applied for jobs since July 2010. He has approximately sixteen years of experience doing auto body work but can no longer do such work.

Instead, he has applied for menial jobs at local stores and restaurants. Harrington thought that he could do the work required of him at these jobs, including that of stocking shelves, with the limitation that he not be required to lift too much weight. He said he needed the money and assumed that if he were hired, he would take extra medication to cope with the ensuing pain as needed.

Harrington stated that he recently completed a month of physical therapy. He said he can take care of his own basic hygiene needs and get dressed without assistance ninety five percent of the time. For the remaining five percent, his lower back pain limits his mobility and he needs assistance. Harrington said he recovers from his back pain in anywhere from a week to a month.

Vocational Expert, Dennis Gustafson, also testified at Harrington's hearing. In response to hypothetical questions from the ALJ, Gustafson opined that someone in Harrington's precise position had no transferable skills that could be utilized in other occupations classified as light or sedentary. He said there were other light and sedentary jobs, however, that such people could do. Examples included working as a cashier, housekeeper, or in clerical-related occupations. Gustafson explained that these positions could be found in a few different industries and provided statistics on the approximate number of people employed in these occupations both in Illinois and nationally.

In response to direct questioning from the ALJ, Gustafson affirmed that the inability to engage in constant movement of the head and neck from side to side would have no effect on such a person's ability to perform the sedentary jobs he mentioned. If the jobs were limited to frequent movement, but not constant, however, he said that would impact the person's ability to perform the light jobs. Gustafson found that two minutes standing or walking out of every hour working during the sedentary jobs he listed would not have a substantial impact on the job numbers he provided. He stated that if a hypothetical subject in Harrington's

shoes were off task as much as fifteen percent of the time, they would be found inadequate and ultimately, unemployed.

## III

In her Decision, the ALJ determined that Harrington had the severe impairments of degenerative disc disease, headaches, and high blood pressure (20 CFR 404.1520(c)). (D. 5 at pg. 40). In so doing, she also rejected the categorization of some of Harrington's other impairments as severe—including his anxiety and depression. Notably, the ALJ also stated that while she "has considered the claimant's pain from degenerative disc disease, the medical evidence does not establish an independent medically determinable impairment of chronic pain syndrome." *Id.* at pg. 41.

Ultimately, the ALJ concluded that Harrington "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* She found that "the objective medical evidence of record does not support a finding that [Harrington] experiences symptoms or limitations of a severity sufficient to meet or medically equal the requirements set forth in any listing or section." *Id.* She crafted the following Residual Functional Capacity (RFC) for Harrington:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is restricted to occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, or scaffolds and he must avoid concentrated exposure to noise.

*Id.* at pg. 44. The ALJ further recounted Harrington's testimony at the hearing regarding his condition and the limitations he claimed in his functional reports. Following protocol, she determined there were medical impairments reasonably

expected to cause Harrington's symptoms. The ALJ found, however, that Harrington's alleged symptoms were not entirely credible. *Id.* at pg. 45.

The ALJ went on to find that the objective medical evidence was inconsistent with the degree of pain and functional limitation Harrington claimed to experience. She noted that Harrington's declared symptoms of extreme limited functional capacity are not supported by the medical records. She emphasized that, based on the record, Harrington's degenerative disc disease had stabilized in spite of his claims of increased pain and lack of mobility. The ALJ supported her conclusion by citing Harrington's medical records. Specifically, she compared MRI results of Harrington's cervical spine from November 2008, June 2009, April 2011, and April 2014 with his professed symptoms. In the ALJ's view, the results of this comparison established that Harrington underwent no significant physical changes during this time. She concluded that:

> The stability of the claimant's degenerative changes on imaging is particularly significant when considering the substantially broader range of functioning he had described at the time of his April 2011 imaging studies. On April 14, 2011, shortly after the MRI studies described above, the claimant had reported his back pain was only 3 to 4 out of 10 in severity, on average, and his neck pain averaged 3 out of 10 [citation]. Moreover, he noted he was able to stand as long as he desired without pain, had no pain on walking, and could sit in his favorite chair as long as he liked [citation]. … While the claimant subsequently alleged extreme limitations in connection with his application, the imaging studies did not confirm significant changes in his underlying degenerative disc disease to explain his allegations. Further, no other objective medical evidence accounts for this substantial change in reported functioning.

*Id*. at pg. 45-46.

The ALJ specifically addressed the available medical evidence later in her Decision. She concluded that:

> Overall, the objective evidence does not reflect clinical signs or findings suggestive of impairments that would produce the degree of pain or functional limitation the claimant has alleged. In acknowledgment of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the undersigned has also considered the credibility of the claimant's subjective complaints and the factors set forth in 20 CFR 404.1529(c) and 416.929(c) and in Social Security Ruling 96-7p. Consideration of these factors does not suggest the claimant is more limited than demonstrated by the objective medical evidence.

*Id.* at pg. 47. The ALJ ultimately found that Harrington was not disabled.

## IV

Harrington argues that the ALJ erred: (1) in finding he was not disabled; and (2) in determining his credibility.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The Social Security Administration determines disability by asking whether a medically determinable impairment prevents the claimant from engaging in past

relevant work or any substantial gainful work that exists in the national economy. 42 U.S.C. §423(d)(1)(A); 20 C.F.R. § 404.1505; *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of their impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work, which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. In the instant case, Harrington claims the ALJ erred in making her determination at Step Five.

**A**

First, Harrington argues the ALJ erred in finding that he was not disabled. He claims the evidence does not support a finding that he has the ability to perform light work. Harrington argues the ALJ's finding that he had the RFC to perform a range of light work "appears" to be based on the wrong doctors' findings and ignores "more recent evidence" which demonstrates his significant limitations. (D. 12 at pg. 10). He points to portions of medical records created by his treating physicians after April 2013 which the ALJ did not specifically discuss in her Decision. Without them, in Harrington's view, "the ALJ did not provide any logical bridge between the relevant evidence and her interpretation of that evidence which would merit upholding her findings." *Id.* at pg. 14. The Court finds otherwise.

Though an ALJ must give controlling weight to the medical opinion of a treating physician, the ALJ must do so only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), *citing Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. §416.927(c)(3). If the ALJ does not give a treating physician's opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927; *Moss v. Astrue*,

9

555 F.3d 556, 561 (7th Cir. 2009). Harrington points to nothing in the record which suggests the ALJ did not consider these factors.

In fact, the ALJ did not err in failing to give Harrington's treating physicians' opinions controlling weight because she did consider the factors required. The evidence Harrington puts forth in support of his counterclaim is his subjective assertions to treating physicians, which they in turn memorialized in medical records. These are not treating physician opinions. Furthermore, even if these were the treating physicians' actual opinions, the ALJ was justified in assigning them less weight than the opinions of the state agency physicians. At most, the ALJ failed to specifically discuss the medical records in her decision that Harrington now claims are dispositive. This was not error.

The state agency physicians issued the opinions at issue in April 2013. The ALJ subsequently relied upon them, in part, in making her ruling. (D. 5 at pg. 45-48). Harrington emphasizes that the evidence generated after this date, in the form of medical records, demonstrates that he had "work-preclusive reaching limitations that should have been incorporated into the ALJ's RFC finding… ." (D. 17 at pg. 3-4). He fails, however, to specify what would have been an appropriate restriction.

Regardless, Harrington simply points to the fact that after April 2013, he had pain treatment injections, self-reported worsening neck pain and muscle tenderness, and engaged in physical therapy, none of which alleviated his alleged symptoms. (D. 12 at pg. 11). He claims the ALJ "ignor[ed] the full picture presented by the evidence." (D. 12 at pg. 13). However, the ALJ considered this information, generally, in reaching her conclusion. (D. 5 at pg. 45-48). Simply put, the subjective evidence put forth by Harrington pales in comparison to the ALJ's comprehensive assessment, which relies heavily on objective medical evidence.

Harrington's implicit and explicit arguments that the ALJ ignored the post-April 2013 evidence simply are not true.

As discussed previously, the numerous MRI reports of Harrington's cervical spine figured prominently in the ALJ's decision. Beyond these reports, the ALJ also noted Harrington's self-reported range of mobility and symptoms at various times. She specifically discussed various medical records with dates prior to April 2013. In the process, she also patently acknowledged that Harrington's reported range of mobility and symptoms had since drastically worsened. This much was clear from his testimony at the hearing alone. But the ALJ juxtaposed Harrington's subjective claims against medically objective evidence and reasonably found the former lacking. Thus, she did not err.

More importantly, the ALJ need not have addressed the evidence Harrington now complains she neglected. As Harrington himself now asserts, an ALJ need not discuss all of the evidence in the record, but does have a duty not to ignore "an entire line of evidence in the record contrary to the[ir] ruling." (D. 12 at pg. 13, citing *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). Generalizing Harrington's later claims of increased pain and decreased mobility is not akin to the ALJ ignoring an *entire* line of evidence contrary to her ruling. On the contrary, she explicitly accounted for it.

The Seventh Circuit's remarks on this point in *Golembiewski* were preceded by the statement that "[t]he ALJ must evaluate the record fairly." *Golembiewski* 322 F.3d at 917. The ALJ's reading of the record and finding in this case were fair. Harrington's points do not suggest anything in her ruling was unfair. Finding that the ALJ's ruling in this instance was unsupported by substantial evidence would be against the spirit of *Golembiewski*. By Harrington's logic, ALJs would literally need to address every piece of evidence in their decisions in order to make a finding based on substantial evidence. Moreover, as the Commissioner aptly

11

highlights, Harrington fails to establish how this alleged error prejudiced him. Therefore, the Court finds that Harrington's argument on this issue fails on the merits.

The ALJ provided a sufficient explanation for her findings. In other words, the Court can trace the path of the ALJ's reasoning from her discussion of the medical records and the weight she assigned to them in determining the RFC she ultimately formulated. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate [their] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The ALJ addressed the record evidence as a whole in her Decision. The Court finds that substantial evidence supports her decision.

**B**

Harrington further argues that the ALJ's finding that his subjective complaints were not credible is unsupported by substantial evidence. (D. 12 at pg. 14). Specifically, he continues with his claim that the ALJ "ignore[d] pertinent evidence showing greater limitations" and misinterpreted the record. *Id.* Harrington cites multiple issues to support his claim.

Harrington first argues that the ALJ's errors in this respect are best encapsulated by her treatment of Harrington's status as a candidate for cervical spine surgery. By his estimation, the fact that he is not a candidate for surgery is not proof positive that his claims of limited mobility are false. (D. 12 at pg. 14-15). This is an accurate assertion. It is not, however, an accurate account of the basis for the ALJ's Decision. Harrington's status as a non-candidate for surgery was one factor among many that the ALJ relied upon in making her finding. As discussed previously, central to her Decision was Harrington's multiple MRI reports.

Harrington's argument on this point does nothing to detract from that substantial evidence.  Accordingly, his argument on this point fails.

Harrington further claims the ALJ's reliance on Harrington's MRI reports and the fact that he applied for jobs after the onset of his disability are problematic. He also argues the ALJ should have considered his track record as a dependable and hard-working employee prior to the onset of his disability and found him credible as a result.  In making these arguments, Harrington relies heavily on his previous assertion that the ALJ ignored contrary evidence and continues to claim she failed to provide an adequate explanation to permit meaningful review of her characterization of the evidence.  (D. 12 at pg. 16).  He even asserts that in other instances there simply was no evidence supporting her findings.  *Id.* at pg. 17.  To the extent that Harrington's arguments continue to rely on the faulty assumptions he made in his first argument, the Court will not address them further for the reasons articulated *supra*.

What remains at issue is the weight the ALJ assigned to Harrington's testimony, which implicates his credibility.  SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."[3]  An ALJ must provide "enough detail and clarity to permit meaningful review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).  In other words, a credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

---

[3] SSR 96-7p was superseded by SSR 16-3p, effective March 16, 2016.  The operative language the Court quotes here from SSR 96-7p, however, appears in SSR 16-3p verbatim.  By either standard, the Court's analysis remains the same.

Just as the Court cannot re-weigh the medical evidence of record and resolve conflicts in the record, nor can the Court make its own credibility finding. "When assessing an ALJ's credibility determination, [the Court does] not . . . undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the Court] merely examines whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). It is only when an ALJ's determination lacks any explanation or support that it is "patently wrong." *Id*. at 413-14. Here, there is no reasonable argument the ALJ's Decision is patently wrong.

An ALJ can consider objective evidence in evaluating a claimant's symptoms. 20 C.F.R. § 404.1529(c)(2). As long as the ALJ properly considered both the claimant's subjective complaints and any evidence undermining the credibility of those complaints, and based her determination on multiple factors, along with the entire record, "a healthy skepticism" of the claimant's testimony is permissible. *Simila v. Astrue*, 573 F.3d 503, 517-20 (7th Cir. 2009). That is precisely what the ALJ did in this case.

The ALJ considered Harrington's subjective claims of symptoms and the evidence undermining his complaints as well. The evidence that undermines his complaints reasonably includes the facts that: (1) his MRI reports objectively indicate that his physical condition, namely his disc degeneration, remained stable, and (2) he has admittedly been willing to do work which requires him to operate outside of his professed limitations, in spite of the resulting pain he acknowledges will ensue. These factors reasonably outweigh Harrington's subjective claims.

The ALJ was also clearly aware of Harrington's respectable work history. He confirmed this much for the ALJ himself, in person. A claimant's good work history does entitle them to substantial credibility. *Tyson v. Apfel*, 107 F.Supp.2d

1267, 1270 (D. Colo. 2000). A track record of solid work performance, however, does not create an immunity shield from credibility determinations in a Social Security proceeding. Harrington's work history, no matter how spectacular it may have been, does not overwhelm the evidence the ALJ relied upon. There is nothing in the ALJ's Decision suggesting that she did not review the entire record as required before considering Harrington's testimony with a dose of skepticism. Further, Harrington highlights nothing in the record which undermines the ALJ's assessment or leads the Court to suspect her finding was not supported by substantial evidence. Harrington's arguments on these points fail on the merits as well.

In her ruling, the ALJ provided reasons why she found Harrington's testimony not fully credible. (*e.g.* D. 5 at pg. 46). The objective medical evidence she cited is inconsistent with the degree of daily functional impairment Harrington alleges. For example, an examining neurosurgeon reviewed Harrington's MRIs and stated that he could return to full activity without restriction. *Id.* Thus, the ALJ included specific reasons for her finding on credibility which are supported by evidence in the record. The ALJ compared the objective medical evidence of Harrington's impairments with his self-reported complaints of pain and lack of mobility. In so doing, she provided enough clarity and detail to permit meaningful review. The ALJ considered the contrary evidence and explained why she rejected it. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) ("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record"). The ALJ did not, therefore, commit an error in her credibility analysis.

In closing, the Court notes that the ALJ did make an assertion without supporting evidence. She stated that "[g]iven the role of smoking in accelerating spinal degeneration, which the claimant alleges causes his most severe limitations

and adds to his headaches, his decision to continue this habit without cessation assistance suggests his symptoms have not been as severe and motivating as he has alleged." *Id*. Harrington did not address this statement in his motion. The Court sees no evidence of the link between smoking and accelerating spinal degeneration in the record. Thus, it was erroneous for the ALJ to insert her own medical opinion on this matter into her Decision. *See Shramek v. Apfel*, 226 F.3d 809, 811-13 (7th Cir. 2000). In light of the overwhelming evidence, however, the Court finds this error harmless.

**V**

For the reasons stated herein, Harrington's Motion for Summary Judgment (D. 11) is DENIED and the Commissioner's Motion for Summary Affirmance (D. 16) is GRANTED. This matter is now terminated.

*It is so ordered.*

Entered on March 10, 2017.

s/Jonathan E. Hawley
U.S. MGISTRATE JUDGE
